FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 05 2014   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARY JOSEPHINE SMITH,

           Plaintiff,

-against-

MARGARET SMITH,

           Defendant.
----------------------------------------------------------X

13-CV-1635 (SJF)(ARL)

**OPINION & ORDER**

FEUERSTEIN, J.

On March 27, 2013, plaintiff Mary Josephine Smith ("plaintiff") commenced this action against defendant Margaret Smith ("defendant") pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). On June 4, 2013, plaintiff filed an amended complaint against defendant asserting claims seeking, *inter alia*, damages for unjust enrichment, conversion, misrepresentation and promissory estoppel. Defendant now moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, or, in the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the amended complaint. For the reasons stated herein, defendant's motion is granted.

I.     Background

    A.     Factual Background[1]

Plaintiff is a citizen of the State of Virginia and is the surviving spouse of Edward Joseph Smith, Jr. ("decedent"). (Amended Complaint ["Amend. Compl."], ¶¶ 1-2; Answer ["Ans."], ¶ 1).

---

[1] The facts are undisputed, unless otherwise indicated.

1

Defendant is a citizen of the State of New York and is the mother of decedent. (Amend. Compl., ¶¶ 3-4; Ans., ¶ 1).

Decedent was a special agent with the former United States Customs Service ("USCS"), subsequently consolidated into the United States Immigration and Customs Enforcement ("ICE")[2], until his death on October 15, 2012. (Amend. Compl., ¶ 7; Ans., ¶ 4). Pursuant to decedent's federal employment, he was provided with a Federal Employees Group Life Insurance Policy ("the FEGLI policy"). (Amend. Compl., ¶ 8; Ans., ¶ 4). In 1992, prior to meeting plaintiff, decedent designated his parents, defendant and Edward Smith Sr., as beneficiaries of the FEGLI policy ("the 1992 Designation of Beneficiary"). (Amend. Compl., ¶ 9; Ans., ¶ 4). Edward Smith Sr. predeceased decedent, (Amend. Compl., ¶ 10; Ans., ¶ 4), leaving defendant as the sole beneficiary of the FEGLI policy pursuant to the 1992 Designation of Beneficiary.

Plaintiff and decedent were married in 2000. (Amend. Compl., ¶ 11; Ans., ¶ 4).

Plaintiff alleges that in July 2001, decedent "executed and submitted to USCS an updated Designation of Beneficiary form designating [her] as beneficiary of the FEGLI Policy" ("the 2001 Designation of Beneficiary"). (Amend. Compl., ¶ 12). At that time, decedent "was working for USCS at the Special Agent in Charge ('SAC') principal field office located at the World Trade Center complex." (Amend. Compl., ¶ 13; Ans., ¶ 6 ["[U]pon information and belief, in July 2001 Decedent was working for the [USCS] as a Special Agent in Charge * * *, and * * * the principal field office was located at the World Trade Center complex."]) According to plaintiff, decedent's "close friend and fellow Supervisory Special Agent Frank J. Benicasa ('Benicasa'), witnessed

---

[2] ICE was "[c]reated in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service * * *." http://www.ice.gov/about/overview/.

2

[him] sign [the 2001] beneficiary forms[,]" (Amend. Compl., ¶ 14), as did his "co-worker and fellow Special Agent, Howard Lam ('Lam') * * *[,]" (Amend. Compl., ¶ 17). Plaintiff alleges, "[u]pon information and belief," that "at the time" decedent told Benicasa (a) "that the beneficiary forms designated Plaintiff as the beneficiary of the FEGLI Policy[,]" (Amend. Compl., ¶ 15), and (b) "that the [2001] beneficiary form was properly submitted to USCS[,]" (Amend. Compl., ¶ 16). In addition, plaintiff alleges, "[u]pon information and belief, [that] Benicasa and Decedent had numerous conversations in the following years concerning Plaintiff being the beneficiary under the FEGLI Policy." (Amend. Compl., ¶ 19). Plaintiff further alleges that decedent told her "at the time" "that he executed and submitted to USCS Designation of Beneficiary forms designating her beneficiary under the FEGLI Policy." (Amend. Compl., ¶ 18).

Plaintiff alleges that after decedent was diagnosed with acute lymphocytic leukemia in 2011, they "had extensive conversations regarding [their] finances in which [he] stated [she] was the beneficiary of the FEGLI Policy," (Amend. Compl., ¶¶ 20-21), and that in 2012, decedent "spoke with Benicasa regarding assisting Plaintiff and their two young daughters with the finances of his estate upon his death[] * * * [and] again reiterated that Plaintiff was designated to receive the FEGLI Policy benefits." (Amend. Compl., ¶¶ 22-23).

Upon decedent's death, the federal Office of Personal Management ("OPM") informed plaintiff, through her financial advisor, that the only FEGLI Designation of Beneficiary form that it was able to locate was the 1992 Designation of Beneficiary designating defendant as the beneficiary of the FEGLI policy. (Amend. Compl., ¶ 24; Ans., ¶ 10). On or about November 6, 2012, plaintiff and defendant had a conversation in which: (1) plaintiff informed defendant of the purported loss of the 2001 Designation of Beneficiary, (Amend. Compl., ¶ 25; Ans., ¶ 11), and (2)

defendant allegedly (a) "represented to Plaintiff that [she] would expedite the processing of the FEGLI Policy and turn over the proceeds to Plaintiff so that Plaintiff could care and provide for her daughters[,]" (Amend. Compl., ¶ 26), and (b) "suggested that Plaintiff not attempt to delay the processing of the FEGLI Policy by raising the issue of Plaintiff being the correct beneficiary because it would just delay the release of the proceeds and thereby delay Defendant's release of the proceeds to Plaintiff[,]" (Amend. Compl., ¶ 27). According to plaintiff, "[i]n reliance upon Defendant's promises and representations and their family relationship, [she] did not stop the release of the proceeds of the FEGLI Policy to Defendant and informed the Decedent's financial advisor to provide Defendant's address to the person processing the FEGLI Policy[,] * * * [and] [she] submitted a death certificate in support of the release of the FEGLI Policy proceeds." (Amend. Compl., ¶¶ 28-29).

Defendant received the full proceeds of the FEGLI Policy in the amount of approximately four hundred ninety-two thousand dollars ($492,000.00), (Amend. Compl., ¶ 30; Ans., ¶ 14), and has refused to pay to plaintiff any of those proceeds, (Amend. Compl., ¶ 31; Ans., ¶ 14).

B. Procedural History

On March 27, 2013, plaintiff commenced this action against defendant pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). On June 4, 2013, plaintiff filed an amended complaint against defendant asserting claims seeking, *inter alia*, damages and the imposition of a constructive trust on all of the proceeds defendant received from the FEGLI policy based upon theories of unjust enrichment (first claim for relief), (Amend. Compl., ¶¶ 32-38); conversion (second claim for relief), (Amend. Compl., ¶¶ 39-47); misrepresentation (third claim

for relief), (Amend. Compl., ¶¶ 48-53); and promissory estoppel (fourth claim for relief), (Amend. Compl., ¶¶ 54-59). With respect to her unjust enrichment claim, plaintiff alleges, *inter alia*: (1) that she "was the rightful and intended beneficiary of the FEGLI Policy and the proceeds of such Policy[,]" (Amend. Compl., ¶ 33); (2) that defendant "knowingly received and retained the proceeds of the FEGLI Policy that were properly due to Plaintiff[,]" (Amend. Compl., ¶ 34); (3) that "[a]s a result of Defendant's wrongful conduct, Defendant has been unjustly enriched by the payment of the FEGLI Policy to the detriment of Plaintiff[,]" (Amend. Compl., ¶ 35); (4) that defendant's "unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged [in the amended complaint][,]" (Amend. Compl., ¶ 36); and (5) that "[i]t is inequitable for Defendant to be permitted to retain the benefits she received and retained, without justification, from the proceeds of the FEGLI Policy, and her retention of such funds constitutes unjust enrichment[,]" (Amend. Compl., ¶ 37).

With respect to her conversion claim, plaintiff alleges, *inter alia*: (1) that she (a) "has a possessory right and interest in the proceeds of the FEGLI Policy[,]" (Amend. Compl., ¶ 40), and (b) "is entitled to immediate possession of th[o]se proceeds[,]" (Amend. Compl., ¶ 44); (2) that defendant's "dominion over the FEGLI Policy and interference with it is in derogation of Plaintiff's rights[,]" (Amend. Compl., ¶ 41); and (3) that defendant (a) "has wrongfully assumed and exercised the right of ownership over the proceeds of the FEGLI Policy, in hostility to the rights of Plaintiff, without legal justification and despite being informed that she had no right to those proceeds[,]" (Amend. Compl., ¶ 42), (b) "intends to permanently deprive Plaintiff of th[o]se proceeds[,]" (Amend. Compl., ¶ 43), (c) "has wrongfully converted th[o]se specific and readily identifiable proceeds[,]" (Amend. Compl., ¶ 44), and (d) "is obligated to return the FEGLI Policy

5

proceeds to Plaintiff[,]" (Amend. Compl., ¶ 46).

With respect to her misrepresentation claim, plaintiff alleges, *inter alia*: (1) that "[i]n reliance upon Defendant's promises and representations and their family relationship, [she] did not seek to prevent the proceeds from the FEGLI Policy from being distributed to Defendant and, in fact, acted to expedite the processing of those proceeds to Defendant[,]" (Amend. Compl., ¶ 49); (2) that defendant's representations (a) "were knowingly and intentionally false and made maliciously and in bad faith[,]" (Amend. Compl., ¶ 50), and (b) "were made to acquire the proceeds of the FEGLI Policy and to defraud Plaintiff of her rightful ownership of them[,]" (Amend. Compl., ¶ 51); and (3) that "[a]s a result of Defendant's fraudulent promises and misrepresentations, Defendant received and continues to retain the proceeds from the FEGLI Policy[,]" (Amend. Compl., ¶ 52).

With respect to her promissory estoppel claim, plaintiff alleges, *inter alia*: (1) that defendant's "promise to pay [her] the proceeds of the FEGLI Policy was clear and unambiguous[,]" (Amend. Compl., ¶ 55); (2) that defendant "has breached that promise[,]" (Amend. Compl., ¶ 56); (3) that she "relied on Defendant's promise in agreeing to facilitate the release of the proceeds of the FEGLI Policy to Defendant[,]" (Amend. Compl., ¶ 57); and (4) that her "reliance was reasonable and foreseeable[,]" (Amend. Compl., ¶ 58).

Defendant now moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, or, in the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the amended complaint.

II. Discussion

A. Rule 12(c) Standard of Review

In deciding a Rule 12(c) motion, the same standard as applicable to a motion to dismiss under Rule 12(b)(6) is employed. See Hogan v. Fischer, 738 F.3d 509, 514-15 (2d Cir. 2013); In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013); Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). Thus, the standard of review on a motion made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); see In re Thelen, 736 F.3d at 218; Kirkendall v. Halliburton, Inc., 707 F.3d 173, 178-79 (2d Cir. 2013), cert. denied, 134 S. Ct. 241, 187 L. Ed. 2d 146 (2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6) or Rule 12(c), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013); In re Thelen, 736 F.3d at 218; Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to

matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also In re Thelen, 736 F.3d at 218.

1.  The Federal Employees' Group Life Insurance Act of 1954

"The Federal Employees' Group Life Insurance Act of 1954 (FEGLIA), 5 U.S.C. § 8701 *et seq.*, establishes a life insurance program for federal employees[,]" Hillman v. Maretta, — U.S. —, 133 S. Ct. 1943, 1947, 186 L. Ed. 2d 43 (2013), and "includes an express pre-emption provision[,]" id., at 1948, which provides "in relevant part that '[t]he provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State. . ., which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.'" Id. (brackets in original) (quoting 5 U.S.C. § 8709(d)(1)).

"FEGLIA provides than an employee may designate a beneficiary to receive the proceeds of his life insurance at the time of his death[,]" Hillman, — U.S. —, 133 S. Ct. at 1948 (citing 5 U.S.C. § 8705(a)[3]), and "that, upon an employee's death, life insurance benefits are paid in accordance with a specified 'order of precedence.'" Id. (quoting 5 U.S.C. § 8705(a)). Proceeds under a FEGLI policy "accrue '[f]irst, to the beneficiary or beneficiaries designated by the

---

[3] Section 8705(a) provides, in relevant part, that with exceptions not relevant here, "the amount of group life insurance * * * in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence: First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office * * *. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect."

employee in a signed and witnessed writing received before death.'" Id. (brackets in original) (quoting 5 U.S.C. § 8705(a)); see also 5 C.F.R. § 870.801(a) ("Except as provided in paragraph (d) of this section and § 870.802(g)(2), benefits are paid according to the order of precedence stated in 5 U.S.C. 8705(a), as follows: (1) To the designated beneficiary (or beneficiaries) * * *.") FEGLIA's implementing regulations provide, in relevant part, that with exceptions not relevant here, "if an insured individual wants benefits paid differently from the order of precedence, he/she must file a designation of beneficiary. A designation of beneficiary cannot be filed by anyone other than the insured individual." 5 C.F.R. § 870.802(a).

"To be effective, the beneficiary designation and any accompanying revisions to it must be in writing and duly filed with the Government." Hillman, — U.S. —, 133 S. Ct. at 1948; see also 5 C.F.R. § 870.802(b) ("A designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people. The completed designation of beneficiary form may be submitted to the appropriate office via appropriate methods approved by the employing office. The appropriate office must receive the designation before the death of the insured.") "A designation, change, or cancellation of beneficiary in a will or any other document not witnessed and filed as required by this section has no legal effect with respect to benefits under [FEGLIA]." 5 C.F.R. § 870.802(c); see also 5 U.S.C. § 8705(a). FEGLIA "is unequivocal about the fact that the only valid way in which a covered employee can designate or change the beneficiary of his or her life insurance benefits is by filling out and signing the appropriate form, and submitting it with the signatures of two impartial witnesses to the employing office * * *." Hewitt v. Thrift Saving Plan, 664 F. Supp. 2d 529, 536-37 (D. S.C. 2009). The legislative history of FEGLIA also demonstrates that Congress "intended to establish, for reasons of administrative convenience, an

10

inflexible rule that a beneficiary must be named strictly in accordance with the statute, irrespective of the equities in a particular case[,]" Metropolitan Life Ins. Co. v. Manning, 568 F.2d 922, 926 (2d Cir. 1977) (citing Senate Rep. No. 1064, 89th Cong., 2d Sess. (1966), quoted in 2 U.S.Code Cong. & Admin. News 2070, at 2071 (1966))[4], i.e., by properly completing a designation of beneficiary form and submitting it to the employing office. See Hewitt, 664 F. Supp. 2d at 536-37. "Section 8705(a) requires strict technical compliance with the requirements of the statute." Sullivan, 897 F. Supp. at 68.

Thus, "FEGLIA creates a scheme that gives highest priority to an insured's designated beneficiary." Hillman, — U.S. —, 133 S. Ct. at 1951. "FEGLIA's implementing regulations further underscore that the employee's 'right' of designation 'cannot be waived or restricted.'" Id. at 1952 (quoting 5 C.F.R. § 843.205(e)); see also 5 C.F.R. § 870.802(f) ("An insured individual * * * may change his/her beneficiary at any time without the knowledge or consent of the previous beneficiary. This right cannot be waived or restricted.") Thus, in enacting FEGLIA, "Congress spoke with force and clarity in directing that the proceeds [of a FEGLI policy] *belong* to the named beneficiary and no other." Hillman, — U.S. —, 133 S. Ct. at 1951 (emphasis in original; quotations, brackets and citation omitted). Thus, a cause of action under state law allowing a third party, i.e., someone other than the named beneficiary of a FEGLI policy, to recover the proceeds of a FEGLI policy from the named beneficiary is preempted by federal law because it "interferes with

---

[4] The Senate Report addressing the 1966 congressional amendment to what is now section 8705(a) notes that section 8705(a) was rewritten "to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary unless the designation has been properly received by the employing office." Metropolitan Life Ins. Co. v. Sullivan, 897 F. Supp. 65, 68 (E.D.N.Y. 1995), aff'd, 96 F.3d 18 (2d Cir. 1996) (quoting Senate Rep. No. 1064, 89th Cong., 2d Sess. (1966) quoted in 2 U.S.Code Cong. & Admin. News 2070, at 2071 (1966)).

11

Congress' scheme * * * [by] displac[ing] the beneficiary selected by the insured in accordance with FEGLIA and plac[ing] someone else in her stead[] * * * [and] frustrates the deliberate purpose of Congress to ensure that a federal employee's named beneficiary received the proceeds." Id. (quotations and citations omitted). "In short, where a beneficiary has been duly named, the insurance proceeds she is owed under FEGLIA cannot be allocated to another person by operation of state law." Id. at 1953.

Plaintiff would only be entitled to the proceeds of the FEGLI policy if decedent completed a designation of beneficiary form, signed it, had it witnessed by two disinterested parties, and properly submitted it to his employing office before he died. See Hewitt, 664 F. Supp. at 537. However, based upon the allegations in the amended complaint, the only designation of beneficiary form on file with decedent's employing office or the OPM was the 1992 Designation of Beneficiary designating defendant as the sole surviving beneficiary of the FEGLI policy. Thus, the only reasonable inference to be drawn from the allegations in the amended complaint is that decedent did not properly submit the 2001 Designation of Beneficiary to his employing office prior to his death. "Even taking all of [p]laintiff's allegations as true, * * * the fact that [d]ecedent did everything except submit the required document [to his employing office] is [] insufficient to establish [p]laintiff's beneficiary status under FEGLIA." Id.[5]

---

[5] Nor do the declarations submitted by plaintiff in opposition to defendant's motion change this result. The assertions regarding statements decedent made to plaintiff, Rae Kim ("Kim") and Benicasa about his filing of a beneficiary form designating plaintiff as the sole beneficiary of the FEGLI Policy, (Declaration of Mary Josephine Smith dated November 12, 2013 ["Plf. Decl."], ¶¶ 6, 9, 11-12; Declaration of Frank Benicasa ["Benicasa Decl."], ¶¶ 7-12; Declaration of Rae Kim ["Kim Decl."], ¶¶ 5, 7, 9-10), offered to prove the truth of the matter asserted therein, are inadmissible hearsay, see Fed. R. Evid. 801 and 802, and do not fall within any of the exceptions to the rule against hearsay provided in Rules 803, 804 and 807 of the Federal Rules of Evidence. None of the declarations contain any other assertion from which it may reasonably be inferred that

Moreover, any consideration of the decedent's intent in changing the beneficiary of the FEGLI policy "is foreclosed by the inflexible, mandatory language of the FEGLIA order of precedence, and FEGLIA's express preemption of conflicting state law." Metropolitan Life Ins. Co. v. Holland, 134 F. Supp. 2d 1197, 1202 (D. Or. 2001); see also Manning, 568 F.2d 922, 926 (2d Cir. 1977) (holding that FEGLIA precludes courts from engaging in an analysis of the decedent's intent "that a person not formally designated should receive the proceeds of the insurance"). In addition, "under FEGLIA, the equities are neither relevant nor determinative on the issue of who is entitled to FEGLI life insurance proceeds." Holland, 134 F. Supp. 2d at 1202.

Since all of plaintiff's claims seek, *inter alia*, to recover the amount of the FEGLI policy proceeds from defendant, and defendant, as the only surviving beneficiary designated by decedent on the Designation of Beneficiary form on file in the employing office or the OPM, was the rightful beneficiary of the proceeds of such policy under FEGLIA, all of plaintiff's claims against defendant fail as a matter of law for the reasons set forth below.

---

decedent properly submitted the 2001 Designation of Beneficiary to his employing office. Not only is Benicasa's assertion that "[a]fter [decedent] signed the beneficiary forms, he left with the forms, stating that he was leaving to go and file the forms with the administrative staff at Six World Trade," (Benicasa Decl., ¶ 9), inadmissible hearsay with respect to what decedent did with the forms after he left, it is also insufficient to establish that decedent ever actually submitted the forms to his employing office.

Moreover, although plaintiff and Benicasa suggest that the 2001 Designation of Beneficiary may have been lost in the September 11, 2001 terrorist attacks, which caused damage to Six World Trade Center and caused many federal personnel records to be lost, (Plf. Decl., ¶ 17; Benicasa, ¶ 13), clearly decedent's personnel file was not lost, since the 1992 designation form, as well as other pay and leave records, (see Plf. Decl., ¶ 16), were located. Moreover, plaintiff's claim that the 2001 Designation of Beneficiary was lost due to a "clerical error" is entirely speculative.

a.  Unjust Enrichment Claim

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Nordwind v. Rowland, 584 F.3d 420, 434 (2d Cir. 2009) (quotations and citation omitted); see also Diesel Props S.r.l. v. Greystone Business Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011). "The essence of [an unjust enrichment] claim is that one party has received money or a benefit at the expense of another." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000); see also L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc., 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008), aff'd, 710 F.3d 57 (2d Cir. 2013) (holding that the "equity and good conscience" factor "is critical, and the plaintiffs' [sic] must show that as between the two parties to the transaction the enrichment is unjust."); Vaccariello v. XM Satellite Radio, Inc., 295 F.R.D. 62, 75 (S.D.N.Y. 2013) ("An indispensable ingredient of the equity and good conscience requirement is the existence of an injustice as between the two parties involved." (quotations and citation omitted)).

Since, *inter alia*, plaintiff was not designated as a beneficiary of the FEGLI policy on any Designation of Beneficiary form on file with the decedent's employing office or the OPM, the proceeds of the FEGLI policy were never due her. Thus, the amended complaint fails to state a plausible unjust enrichment claim because defendant, as the sole beneficiary of the proceeds of the FEGLI policy on the Designation of Beneficiary form properly filed with the decedent's employing office, did not derive any benefit at plaintiff's expense. See, e.g. Steinbeck v. Steinbeck Heritage Foundation, 400 F. App'x 572, 578 (2d Cir. Oct. 13, 2010) (affirming dismissal of unjust enrichment claim on the basis that no benefit was derived by the defendant and the plaintiff's

14

expense). Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's unjust enrichment claim (first claim for relief) is granted and plaintiff's unjust enrichment claim is dismissed in its entirety with prejudice pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

b. Conversion Claim

"According to New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (quotations, brackets and citation omitted). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property * * * and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (N.Y. 2006); see also Middle East Banking Co. v. State Street Bank International, 821 F.2d 897, 906 (2d Cir. 1987) ("Under New York law, to establish a conversion action, a plaintiff must show legal ownership of, or a superior possessory right in, the disputed property, and that the defendant exercised an unauthorized dominion over that property, * * * to the exclusion of the plaintiff's rights." (quotations and citation omitted)); Shiotani v. Walters, 555 F. App'x 90, 91 (2d Cir. Feb. 18, 2014) (summary order) ("Under New York law, claims sounding in * * * conversion place the burden on the plaintiff to establish that his right of ownership in the property is superior to that of the defendants.")

Since, *inter alia*, plaintiff does not have any right of ownership to the proceeds of the FEGLI policy, much less a right superior to defendant's rights thereto, she cannot state a plausible

15

conversion claim against defendant. Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's conversion claim (second claim for relief) is granted and plaintiff's conversion claim is dismissed in its entirety with prejudice pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

c.  Fraudulent Misrepresentation Claim

The elements of a fraud claim under New York law are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the party of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006); see also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007). "To prove damages in a fraud action, a plaintiff must demonstrate that the defendant's conduct proximately caused her economic harm." Kaye, 202 F.3d at 614. In other words, "the plaintiff must have suffered losses as a direct, immediate, and proximate result of the defendant's misrepresentation." Id.; see also Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 105 (2d Cir. 2001) (holding that a fraud claim under New York law "requires a showing of proximate causation, such that the injury is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud."); Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 57, 698 N.Y.S. 2d 615, 720 N.E.2d 892 (N.Y. 1999) ("[A]n act of deception, entirely independent or separate from any injury, is not sufficient to state a [fraud] claim * * *.")

Even assuming, *arguendo*, that the allegations in the amended complaint are sufficient to

16

satisfy the first four (4) elements of a fraudulent misrepresentation claim under New York law, plaintiff cannot establish that she suffered any loss as a direct result of defendant's purported misrepresentations. Even absent the alleged misrepresentations by defendant, i.e., that she would expedite the processing of the FEGLI policy and turn over the proceeds to plaintiff, (Amend. Compl., ¶ 26), plaintiff would not be entitled to recover the proceeds of the FEGLI policy since she was not named as a beneficiary on the Designation of Beneficiary form on file with decedent's employing office or the OPM at the time of his death and she could not have stopped the release of those proceeds to defendant, who was the named beneficiary on the only Designation of Beneficiary form on file with decedent's employing office or the OPM, and, thus, was entitled to those proceeds under FEGLIA. In other words, it was decedent's apparent failure to properly submit the 2001 Designation of Beneficiary to his employing office or the OPM, not defendant's purported misrepresentations, that deprived plaintiff of the proceeds under the FEGLI policy. Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's fraudulent misrepresentation claim (third claim for relief) is granted and plaintiff's fraudulent misrepresentation claim is dismissed in its entirety with prejudice pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

d. Promissory Estoppel Claim

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye, 202 F.3d at 615; see also MacDraw, Inc. v. CIT Group Equipment Financing, Inc., 157 F.3d 956, 961 (2d Cir.

17

1998). As with her fraud claim, plaintiff cannot establish that she suffered any injury as a result of her reliance on defendant's purported promises because she would not have received the proceeds of the FEGLI policy even absent those promises or if had she tried to stop the release of those proceeds to defendant or had not facilitated their release to defendant in reliance on those promises. See, e.g. Kaye, 202 F.3d at 615. Since plaintiff cannot satisfy the injury element of her promissory estoppel claim, the branch of defendant's motion seeking dismissal of that claim (fourth claim for relief) is granted and plaintiff's promissory estoppel claim is dismissed in its entirety with prejudice pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III. Conclusion

For the reasons stated herein, the branch of defendant's motion seeking judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted and plaintiff's claims are dismissed in their entirety with prejudice. The Clerk of the Court shall enter judgment in favor of defendant and close this case.

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 5, 2014
       Central Islip, N.Y.